Filed 3/10/23  In re Ronald M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re RONALD M. et al., Persons Coming Under the Juvenile Court Law. | B316541 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANDRE M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP02454B–C) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

————————————————

Andre M. (father) appeals from orders of the juvenile court denying his requests to: (1) place the minors at issue with a paternal relative; and (2) return the minors to his custody, or alternatively, receive further reunification services.

The sole contention raised by father on appeal is that the Los Angeles County Department of Children and Family Services (DCFS) failed to make an adequate inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.) and related state laws (Welf. & Inst. Code, § 224 et seq.).[1]  According to father, this asserted ICWA error requires remand to the juvenile court for further proceedings.

Assuming, without deciding, that there was ICWA inquiry error below, we affirm the juvenile court's orders because any error was harmless.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The dependency proceedings

Father and Joann R. (mother) are the parents of Ronald M. and Michelle M. (minors).

---

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

In November 2019, DCFS filed a dependency petition pursuant to section 300 alleging that six-year-old Michelle and ten-year-old Ronald were at substantial risk of serious physical harm due to (1) father's possession and sales of narcotics while minors were under his supervision and care; (2) father's history of substance abuse and current abuse of illicit substances; and (3) mother's history of substance abuse, which resulted in her loss of custody over minors' half-sibling in an earlier dependency matter.

At the combined jurisdictional and dispositional hearing in December 2019, the juvenile court sustained the allegations against parents, declared minors dependents of the court, removed minors from parents' custody, and ordered DCFS to provide reunification services to parents. Approximately three months later, DCFS placed minors in the home of their godmother and NREFM (non-related extended family member).

At the six-month and twelve-month status review hearings, the juvenile court ordered continued reunification services for parents and granted DCFS the ongoing discretion to liberalize parents' visits from monitored to unmonitored. Minors remained placed with their godmother.

In July 2021, after a contested 18-month review hearing, the juvenile court found by clear and convincing evidence that return of minors to the custody of either parent would create a substantial risk of detriment to minors. The court terminated reunification services for parents and set the matter for hearing on the selection and implementation of a permanent plan pursuant to section 366.26.

3

In September 2021, father filed a "Request to Change Court Order" pursuant to section 388.[2] In his request, father indicated that his relationship with godmother had deteriorated, which affected the quality of his visits with minors. Father requested that minors be placed with a paternal relative who was living in Sacramento at the time. The juvenile court denied the request without a hearing in October 2021. Father timely appealed from that order.

In January 2022, father filed another request pursuant to section 388. This time, father represented that he had finished his court-ordered case plan and requested that the juvenile court return minors to his custody, or alternatively, order further reunification services. Again, the juvenile court denied the request without a hearing. Father timely appealed from that order.[3]

In August 2022, while father's consolidated appeal was pending, the juvenile court selected the permanent plan of legal guardianship, appointed godmother the legal guardian of minors, and terminated jurisdiction. No parties appealed from that order.

[2] Section 388 provides that any parent or other person having an interest in a dependent child may petition the juvenile court to modify or set aside a prior order upon grounds of change of circumstance or new evidence.

[3] Father's appeals from the October 2021 and January 2022 juvenile court orders were originally assigned appellate case numbers B316541 and B319098 respectively. On August 3, 2022, this court ordered the two appeals consolidated for purposes of briefing, oral argument, and decision under lead case number B316541.

4

## II.     ICWA related facts

On November 11, 2019, the family came to the attention of DCFS when law enforcement executed a search warrant on father's home due to suspected trafficking of narcotics.  The children were in the home at the time.  DCFS interviewed father on that date and asked if there was any Indian ancestry in his family.  Father denied any such ancestry.  The next day, DCFS interviewed mother, who also denied having Indian ancestry in her family.

At the initial detention hearing, which took place on November 14, 2019, parents were present with their respective court appointed attorneys.[4]  Each parent signed and submitted a Parental Notification of Indian Status (ICWA-020) form in which they denied Indian ancestry under penalty of perjury.  Upon reviewing these documents, the juvenile court stated: "the court has no reason to know that the Indian Child Welfare Act applies or that these are Indian children."  No party objected to the juvenile court's ICWA finding.  In its minute order, the juvenile court ordered parents "to keep the Department, their Attorney, and the Court aware of any new information relating to possible ICWA status."

At various points throughout the dependency case, father provided DCFS with contact information for the paternal grandmother, a paternal aunt, and two additional paternal relatives.  Mother reported being in touch with maternal relatives, including maternal grandmother and maternal aunts and uncles, and provided DCFS with contact information for one

___

[4] There were no paternal or maternal relatives present at the detention hearing.

5

maternal aunt. It is undisputed that DCFS did not ask any paternal or maternal relatives whether they were aware of Indian ancestry in their respective family heritages.

Each report filed by DCFS after the detention hearing referenced the juvenile court's November 2019 finding that there was no reason to know the minors are Indian children as defined by ICWA.

## DISCUSSION

### I.    Father's appeal is not moot

As a threshold matter, we address DCFS's contention that this court should dismiss father's appeal as moot. DCFS argues that because father did not appeal from the juvenile court's order terminating jurisdiction, and because that order is now final, father's consolidated appeal from the orders denying his section 388 requests is moot.

"[I]t is a court's duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' " (*In re N.S.* (2016) 245 Cal.App.4th 53, 58–59.) A case becomes moot, and subject to dismissal, when it is " ' "impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.] For relief to be 'effective,' . . . the plaintiff must complain of an ongoing harm [that is] . . . redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.* (2023) 14 Cal.5th 266, 276.) This rule applies with respect to dependency proceedings on a case-by-case basis, based upon whether the parent has demonstrated a specific and non-

6

speculative legal or practical consequence to be avoided upon reversal of the jurisdictional findings.  (*Ibid.*)

*In re Rashad D.* (2021) 63 Cal.App.5th 156 is instructive on the issue of mootness as presented in this case.  In that case, the mother appealed from the juvenile court's jurisdictional order declaring the minor a dependent, but did not appeal from the subsequent order terminating jurisdiction with a custody order granting her sole physical custody of the minor, and both parents joint legal custody.  (Prior to the initiation of dependency proceedings, the mother had sole physical and legal custody of the minor.)  The Court of Appeal dismissed the mother's appeal as moot, reasoning that when a party challenges a jurisdictional finding that results in an adverse custody order and the party seeks to have that custody order set aside, "an appeal from the orders terminating jurisdiction and awarding custody is necessary for this court to be able to provide effective relief."  (*Id.* at p. 164.)  In other words, because the mother sought a modification of the custody order, and that custody order was not before the appellate court, the appellate court could provide no "effective relief" for the mother, and "a remand for further proceedings in the juvenile court would be meaningless."  (*Id.* at p. 165.)

Here, in contrast, if this court were to find reversible error, it could provide effective relief to father in the form of a remittitur remanding the matter to the juvenile court with directions to conduct further inquiry regarding possible Indian heritage.  Although jurisdiction has indeed terminated in the underlying dependency matter, an appeal from the juvenile court's order terminating jurisdiction is not necessary for this court to provide father with effective relief.  That is because this

7

court's remittitur "creates the limited jurisdiction needed for a juvenile court to correct reversible errors found by an appellate court." (*In re S.G.* (2021) 71 Cal.App.5th 654, 664.) "Thus, even after a juvenile court has terminated jurisdiction, a reviewing court can still effectively require the juvenile court to correct reversible error." (*Ibid.*)

Having rejected DCFS's contention that father's appeal is moot, we now address the merits of his appeal.

## II. Any asserted ICWA error was not prejudicial

### A. Statutory framework

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32)." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)

Under California law, the juvenile court and the county welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a dependency petition "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (*Ibid.*) If a child is placed in the temporary custody of a county welfare department, the department "has a duty to inquire whether that child is an Indian child." (§ 224.2, subd. (b).) "Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members,

8

others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (*Ibid*.)

Additionally, at "the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" and "shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

After the initial inquiry, if the juvenile court or the county welfare department "has reason to believe that an Indian child is involved in a proceeding," then the court or department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) If the court or the county welfare department "knows or has reason to know" that an Indian child is involved in a dependency proceeding, the county welfare department shall provide notice to relevant tribes and agencies for hearings that may culminate in an order for foster care placement, termination of parental rights, or adoptive placement. (§ 224.3, subd. (a).)

**B.     Standard of review and prejudicial error**

Generally, " 'we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citation.]" (*In re Dominic F.* (2020) 55 Cal.App.5th 558, 565.)

In the context of asserted ICWA inquiry errors, a majority panel of this division articulated a hybrid substantial evidence/abuse of discretion standard of review. (See *In re Ezequiel G.* (2022) 81 Cal.App.5th 984 (*Ezequiel G.*).) Under this standard, the appellate court reviews the juvenile court's determination as to whether there is reason to know a child is an Indian child for substantial evidence, and the ruling that DCFS exercised due diligence and conducted a proper and adequate ICWA inquiry for an abuse of discretion. (*Id.* at pp. 1003–1004.)

On the issue of prejudice, the Courts of Appeal have crafted varying standards for assessing when a defective ICWA inquiry is harmless. These standards range from mandated reversal whenever an agency's inquiry is deficient (see, e.g., *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432–437) to presumptive affirmance unless the appealing party can demonstrate with a proffer on appeal that further inquiry would lead to a different ICWA finding (see *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065). (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted September 21, 2022, S275578 (*Dezi C.*) [setting forth the different rules that courts have staked out regarding prejudice].)

In *Ezequiel G.*, a majority panel of this division adopted the standard for assessing prejudice set forth in the *Dezi C.* decision: whether " 'the record contains information suggesting a reason to believe that the child may be an "Indian child" within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding.' " (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1014.) Stated another way, in assessing whether ICWA inquiry error is harmless, the question is whether "it is reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that

10

is, the outcome) of the juvenile court's ICWA finding." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 781.)

Assuming, without deciding, that there was ICWA inquiry error below, we affirm the juvenile court's orders because any error was harmless. Based on the record before us, it is not reasonably probable that DCFS's failure to inquire of the paternal and maternal relatives whether they knew of possible Indian ancestry affected the correctness of the juvenile court's ICWA finding.

Here, father and mother unequivocally denied having any Indian ancestry during initial interviews with DCFS, and both attested under penalty of perjury through their signed ICWA-020 forms that they had no known Indian ancestry. They were present at the hearing when the juvenile court found that there was no reason to know ICWA applied and that minors are not Indian children, and yet neither parent (nor their counsel) objected to the court's findings. Parents' denial of Indian ancestry in their respective family heritages strongly suggests that there was no Indian ancestry to report. (See *Ezequiel G.*, *supra,* 81 Cal.App.5th at p. 1010 [a "child's parents will, in many cases, be a reliable source for determining whether the child or parent may be a tribal member"].)

Notably, father does not argue in either his opening brief or reply brief that he and the mother are unreliable reporters of their own family heritage. Nor does he proffer evidence on appeal that would call into question parents' initial denials of Indian ancestry. While the record does contain references to mother having a diagnosis of a mild intellectual disability and some memory loss due to seizures, the record also contains detailed and thorough statements by mother regarding her social

11

history and background, including where she was born and raised, the people with whom she grew up, and her current relationships with relatives. On whole, the record does not demonstrate a good reason to question the reliability of parents' own statements denying Indian ancestry.

Furthermore, both parents were raised in households with biological family members. Father reported having a "wonderful" childhood in which he grew up with his biological mother, sister, and step-father. Likewise, mother grew up with her biological parents and siblings (until her father passed away when she was 10 years old). While it appears that mother left the maternal grandmother's home as a teenager, she lived with a biological brother who was out of state, and returned home approximately six months later to finish high school. The record amply demonstrates that both parents spent extended periods of time with biological relatives who presumably would have shared information regarding Indian family heritage if there was any such information to share. This stands in stark contrast to the situation in *In re Y.W.* (2021) 70 Cal.App.5th 542, where the mother was adopted at the age of two, lacked any information regarding her biological relatives, and was estranged from her adoptive parents. Under those facts, it was reversible error for the agency not to follow up on the one lead it had regarding mom's biological family. (*Id*. at pp. 548, 556.) No such severance or estrangement from all biological relatives exists in this case.

Additionally, the juvenile court ordered mother and father to notify the court, DCFS, and their counsel of any new information relating to possible ICWA status. Yet, there is nothing in the record to indicate that during the 33 months when the dependency case was open, either father or mother notified

12

the juvenile court or DCFS of any information regarding possible Indian ancestry beyond their initial unambiguous statements denying such ancestry.  This likely indicates there was no additional information that DCFS could have gleaned from further inquiry.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 510 [parents' failure to come forward with any additional information regarding Indian ancestry when ordered by the juvenile court to do so indicates that there may be no Indian ancestry to report].)

Finally, we are not persuaded by father's argument that he need not demonstrate any prejudice stemming from ICWA error because he is requesting a "conditional affirmance" and not a reversal of the legal guardianship.  Ultimately, what father seeks is a remand to the juvenile court for further proceedings on ICWA.  Whether couched as a conditional affirmance or reversal, father's requested remand requires a showing of prejudice, which he has failed to demonstrate.  (See *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 995, fn. 2.)

In conclusion, we decline to remand the matter for further proceedings because it is not reasonably probable that any asserted inquiry error affected the correctness of the juvenile court's ICWA finding.

## DISPOSITION

For the foregoing reasons, the juvenile court's orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

NGUYEN (KIM), J.*

I concur:

EDMON, P. J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025, I would vacate the court's ICWA finding and remand for further proceedings.


LAVIN, J.